UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.C.D. By and Through His Guardian Ad Litem, FARAH CHERY,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | Case No.: 23-cv-303-RSH-MSB<br><br>**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**<br><br>[ECF No. 35] |

Plaintiff E.C.D., by and through his guardian ad litem, Farah Chery, appeals a November 18, 2022 decision of an administrative law judge (the "ALJ's Decision") under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1415(i)(2)(A).

The ALJ's Decision determined that defendant San Diego Unified School District (the "District") provided Plaintiff with an individualized education program ("IEP") that offered a free appropriate public education ("FAPE") in the least restrictive environment.

AR 1059–60.[1] In this appeal, Plaintiff alleges several errors by the ALJ; the District asks this Court to affirm the ALJ's Decision.

The Parties have fully briefed their positions, and the Court finds the matter suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1).[2] After review of the record and the Parties' written submissions, the Court affirms the ALJ's Decision and enters judgment in favor of the District.

## I. BACKGROUND

### A. Statutory Background

Congress enacted the IDEA to ensure "all children with disabilities have available to them a free appropriate public education"—also called a FAPE—"that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). The IDEA imposes a "least restrictive environment" requirement, under which states must ensure that "children with disabilities . . . are educated with children who are not disabled" and that "removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A).

To this end, the IDEA requires that students "receive a FAPE through the development of an individualized education program." *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 910 (9th Cir. 2020). The IEP is "the centerpiece of the statute's education delivery system for disabled children." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017) (citation omitted). Every IEP must include statements

---

[1] All citations to the Administrative Record ("AR") refer to the page numbers in the top right-hand corner of the AR, filed as ECF No. 46.

[2] The IDEA provides the court "shall hear additional evidence at the request of a party," *see* 20 U.S.C. § 1415(e)(2), but here neither party has requested a hearing.

about "the child's present levels of academic achievement," "measurable annual goals," and an explanation of "the extent, if any, to which the child will not participate with nondisabled children in the regular class." 20 U.S.C. § 1414(d)(1)(A).

An "IEP Team" composed of parents, teachers, and experts develops the IEP. 20 U.S.C. § 1414(d)(1)(B). When parents and educators disagree about a child's IEP, the IDEA provides for informal dispute resolution procedures and mediation. *Id.* §§ 1415(e), (f)(1)(B)(i). If these measures fail, the aggrieved party is entitled to a "due process hearing" before the State or local educational agency. 20 U.S.C. § 1415(f).

Under California Education Code § 56346(f), when a parent does not consent to a component of a district's proposed IEP, and the district determines this component is necessary to provide a FAPE, "a due process hearing shall be initiated."[3] This provision "compels a school district to initiate a due process hearing when the school district and the parents reach an impasse." *I.R. ex rel. E.N. v. Los Angeles Unified Sch. Dist.*, 805 F.3d 1164, 1169 (9th Cir. 2015). "[A]t the conclusion of the administrative process, the losing party may seek redress in state or federal court." *Endrew*, 580 U.S. at 392.

### B. Factual Background

E.C.D. is an eight-year-old student who qualifies for an IEP under the handicapping conditions of Hard of Hearing and Speech and Language Impairment. ECF No. 35 at 1. E.C.D. was found eligible for special education in December of 2018. ECF No. 35 at 1. At the time, the Parties engaged in IEP discussions for the first time. ECF No. 43 at 3. After numerous IEP meetings and disagreement between the Parties regarding the proper IEP, on February 9, 2021, the Parties entered into a settlement agreement. *Id.* As part of the

---

[3]   A party will "file for due process" to request a due process hearing. At this hearing, "all parties may be accompanied by counsel, and may present evidence and confront, cross-examine, and compel the attendance of witnesses." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 54 (2005); 20 U.S.C. § 1415(h)(1)-(2).

settlement, the Parties agreed to meet to create a new IEP for E.C.D. in December 2021. ECF No. 35 at 2. Between November 20, 2021 and December 16, 2021, the District completed assessments of E.C.D. in preparation for the new IEP, including a psychological evaluation by District psychologist Dr. Renate Ward. AR 157, 726. The Parties met for an IEP meeting on December 16, 2021, but did not complete the IEP and scheduled a follow-up meeting for January 12, 2022.

### 1. *Development of January 12, 2022 IEP*

On January 12, 2022, the IEP team reconvened to discuss E.C.D.'s IEP. AR 3, 158. The next day, on January 13, 2022, the District sent E.C.D.'s parents an email with the proposed IEP from the meeting the day before ("January 2022 IEP"). AR 784. Among other services, the offer included five hours per week of specialized DHH services, pushed into the regular classroom to support E.C.D.'s reading, writing, math and self-advocacy. AR 234. In response to E.C.D.'s parents' request for full-time DHH support for E.C.D., the Team Action notes expressed concern that "too much adult support in the classroom could have harmful effects" by creating "dependence on adults, less opportunities for interactions between [E.C.D.] and his peers, and hinder[ing] progress." *Id.* As to the location for the January 2022 IEP's implementation, the document included references to both Florence Elementary School ("Florence") and Lafayette Elementary School ("Lafayette") throughout. AR 789. E.C.D.'s parents did not consent to the January 2022 IEP and requested an amended IEP with, among other services, full-time DHH support and placement at E.C.D.'s home school, Florence. *Id.*

### 2. *Development of March 25, 2022 IEP*

On March 16, 2022, the Parties convened for another IEP meeting to discuss potential changes. AR 159. Following the meeting, on March 25, 2022, the District sent a prior written notice ("PWN") to E.C.D.'s parents with the amended IEP attached ("March 2022 IEP"). AR 159, 881. The PWN noted that at the January IEP meeting, the District offered a placement "to be implemented at Lafayette." *Id.* The PWN then stated that "the

District continues to believe that Lafayette [] provides advantages to [E.C.D.]," followed by a list of advantages of Lafayette. AR 882–83. The District further stated that E.C.D.'s "needs would best be met by implementing his IEP at Lafayette." AR 883. The March 2022 IEP contained isolated references to Florence, but the majority of the location references were to Lafayette. AR 885, 906–07, 909. The March 2022 IEP Team Action notes clarified that "[t]he IEP Team recommends placement at Lafayette" and made clear that the "IEP document may contain errors that include 'Florence Elementary' in the document, as that is where [E.C.D.] is currently enrolled. That is not editable until enrollment changes." AR 916. At the due process hearing, E.C.D.'s father testified that he "left the March [2022 IEP] meeting [] thinking that . . . all [E.C.D.'s] services would be at Lafayette." AR 1699.

The March 2022 IEP increased E.C.D.'s DHH services from five to fifteen hours per week for the first 60 days and agreed to then reconvene to determine the necessary level of services. AR 882. The District reaffirmed that "based on their assessments of [E.C.D.], . . . they did not feel that a full-time deaf education specialist was necessary for [E.C.D.] to benefit from his educational program," and in fact "that it can result in learned helplessness." AR 882. The Team Action notes further explained that E.C.D.'s parents' proposal would not be the least restrictive environment and that his present levels did not necessitate that level of support. AR 917.

### C. Procedural Background

On May 6, 2022, E.C.D.'s parents rejected the District's March 2022 IEP and notified the District that they would continue E.C.D.'s placement at Echo Horizon School, a private school in Los Angeles, California that E.C.D. began attending in 2021, and would be seeking reimbursement from the District. AR 967. On May 18, 2022, the District sent a PWN responding to E.C.D.'s parents' notice and denying the request for reimbursement. AR 969–71. On June 7, 2022, Plaintiff filed the due process request at issue. AR 1–6.

On September 13, 14, 15, 16, and 27, 2022, the Office of Administrative Hearings held a due process hearing at the request of Plaintiff. *Id.* At the due process hearing,

E.C.D.'s parents, Dr. Farah Cherry and Dr. John Davenport; private audiologist Dr. Joan Hewitt; and Echo Horizon DHH teacher Jennifer Mascolo testified on behalf of Plaintiff. Various District witnesses testified on behalf of the District, including District psychologist Dr. Jean Ward.

On November 18, 2022, the ALJ issued a final administrative decision finding for the District on all seven issues. AR 1033, 1059–60. Regarding the issues appealed to this Court, the ALJ found that Plaintiff did not prove that San Diego denied E.C.D. a FAPE between January 1 and July 8, 2022, by failing to: (1) offer a placement that met his academic needs; (2) offer adequate deaf and hard of hearing services; or (3) provide a clear and specific offer. AR 1059–60.

On the first and second issues, the ALJ found that the District did not fail to offer adequate DHH services and a placement that met E.C.D.'s academic needs, because: (1) the educational setting offered by the District was particularly suited to students who are deaf and hard of hearing and all the teachers were quite experienced in instructing and interacting with DHH children; (2) the District witnesses who assessed E.C.D. testified that E.C.D. did not need a full-time DHH co-teacher in his classroom and their testimony was credible; and (3) the testimony of Plaintiff's witnesses to the contrary was not given substantial weight, because they did not appear to be familiar with the March 2022 IEP as a whole, their testimony was viewed in light of the "snapshot rule,"[4] or they never observed E.C.D. in the classroom. AR 1037–49.

---

[4] *See* AR 1046 ("An IEP is evaluated on the basis of a snapshot in time capturing the information that was available to the IEP team when it made the decisions at issue, not on the basis of subsequent developments or later-formed opinions. An IEP is not judged in hindsight. A tribunal must look to the IEP's goals and goal achieving methods at the time the plan was implemented and ask whether these methods were reasonably calculated to confer Student with a meaningful benefit.") (citing *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999)).

On the third issue, the ALJ found that Plaintiff did not prove that the District denied him a FAPE from January 1 to June 8, 2022, by failing to provide a clear and specific offer, because: (1) Plaintiff's challenge focused on a preliminary draft of the IEP, not the final offer; (2) "the March 13, 2022 IEP team meeting and the final offer in the March 25, 2022 IEP removed all doubt and clearly established that the offer was for placement at Lafayette," and E.C.D.'s parents understood it that way; (3) the March 2022 IEP fully explained the error, eliminating any confusion; (4) even if the offer was confusing, it would have constituted harmless error; and (5) there was no evidence that E.C.D.'s parents rejected the offer because of any confusion about the offered location or any other confusion. AR 1053–58.

On February 15, 2023, Plaintiff filed this action against the District as authorized by 20 U.S.C. § 1415(i)(2)(A). *See* ECF No. 1. On August 5, 2024 and September 5, 2024, the Parties filed their merits briefs. *See* ECF Nos. 35, 42.

On October 13, 2023, Plaintiff filed a motion to supplement the Administrative Record with documents concerning events that occurred subsequent to the administrative hearing. ECF No. 21. Specifically, on March 28 and 29 and May 23, 2023, a Neuropsychological-Psychoeducational Evaluation of E.C.D. was performed by neuropsychologist Dr. Spencer Wetter. ECF No. 34-1 at 1. As part of the evaluation, Dr. Wetter reviewed E.C.D.'s developmental history and previous evaluations, and noted that "[d]espite [E.C.D.'s 2021 assessment] results, which appear to reflect the presence of Dyslexia, the topic of a specific learning disorder was not addressed" by the District. ECF No. 34-1 at 3.

Additionally, on April 26, 2023, E.C.D. began a program appropriate for students with dyslexia called Wilson Reading System ("WRS"). ECF No. 21-7 at 2. On October 1, 2023, Dr. Jean Davenport drafted a Dyslexia Intervention Progress Report based on E.C.D.'s progress with WRS. ECF No. 21-7 at 1.

On October 27, 2023, the District filed its response opposing Plaintiff's motion to supplement the Administrative Record. ECF No. 22. On June 21, 2024, the Court granted in part Plaintiff's motion to supplement the Administrative Record as to post-hearing evidence, including reports of E.C.D. by Dr. Wetter and Dr. Davenport. ECF No. 29. In its order, the Court concluded that the reports were non-cumulative and that they "could . . . shed light on whether the District failed to offer a placement that met Plaintiff's academic needs." ECF No. 29 at 9.

## II. STANDARD OF REVIEW

Under the IDEA, any "party aggrieved by the findings and decision" reached through the state administrative hearing process "shall have the right to bring a civil action with respect to the complaint . . . in a district court of the United States[.]" 20 U.S.C. § 1415(i)(2). The IDEA instructs a reviewing court to "receive the records of the administrative proceedings" and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2). "Thus, judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993).

In IDEA cases, "the district court essentially conduct[s] a bench trial based on a stipulated record." *Ojai*, 4 F.3d at 1472. Thus, this Court will "read the administrative record, consider the new evidence, and make an independent judgment based on a preponderance of evidence and giving due weight to the hearing officer's determinations." *Capistrano Unified Sch. Dist. v. Wartenberg By & Through Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995).

A court's inquiry in suits under § 1415(e)(2) is twofold. First, the court assesses "whether the IDEA's procedures were complied with and second whether the district met its substantive obligation to provide a FAPE." *Los Angeles Unified Sch. Dist. v. A.O. by &*

*through Owens*, 92 F.4th 1159, 1169 (9th Cir. 2024) (internal citation omitted). "Procedural violations of the IDEA can be harmless, but not if they 'substantially interfere with the parents' opportunity to participate in the IEP formulation process, result in the loss of educational opportunity, or actually cause a deprivation of educational benefits.'" *Id.* Importantly, "[n]ot all procedural violations amount to a denial of FAPE." *J.B. v. Kyrene Elem. Sch. Dist. No. 28*, 112 F.4th 1156, 1160 (9th Cir. 2024) (citing *L.J. by & through Hudson v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996, 1003 (9th Cir. 2017)).

"A procedural violation denies a free appropriate public education if it results in the loss of an educational opportunity, seriously infringes the parents' opportunity to participate in the IEP formulation process or causes a deprivation of educational benefits." *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2010); *Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001); *Doe v. Ala. State Dep't. of Educ.*, 915 F.2d 651, 662 (11th Cir. 1990). On the other hand, mere technical violations will not render an IEP invalid. *Amanda J.*, 267 F.3d at 892; *Mercer Island Sch. Dist.*, 592 F.3d at 953; s*ee M.H. v. N.Y.C. Dep't of Educ.*, No. 10-CV-1042 (RJH), 2011 WL 609880, at *11 (S.D.N.Y. Feb. 16, 2011).

A school district violates the IDEA's substantive requirements when it fails to offer an individualized education program "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew*, 580 U.S. at 403; *A.O. by & through Owens*, 92 F.4th at 1156.

A court reviews "whether the [district] has provided a FAPE de novo," but it accords deference to the ALJ's factual findings where they are "thorough and careful." *M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017). Courts "treat a hearing officer's findings as 'thorough and careful' when the officer participates in the questioning of witnesses and writes a decision contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions." *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir. 2007) (quoting *Park, ex rel.*

*Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006)). Neither the hearing duration, the ALJ's active involvement, nor the length of the ALJ's opinion are dispositive of an ALJ's thoroughness and care. *Antelope Valley*, 858 F.3d at 1194. Instead, this Court "must actually examine the record to determine whether it supports the ALJ's opinion." *Id.* at n.1.

The moving party bears the burden of proving that the ALJ's decision was incorrect by a preponderance of the evidence. *Kyrene Elem. Sch. Dist. No. 28*, 112 F.4th at 1161.

## III. ANALYSIS

Plaintiff claims that the ALJ wrongly decided that the District did not deny E.C.D. a FAPE between January 1 and June 8, 2022. First, Plaintiff claims that the District did not provide a clear and specific offer. ECF No. 35 at 11. Second, he claims that the District did not offer him adequate DHH services. *Id.* Third, he claims that the District's offer of placement did not meet his academic needs. *Id.* at 8. The Court addresses each of these arguments, in turn, below.

### A. The District Did Not Deny E.C.D. a FAPE by Failing to Provide a Clear and Specific Offer

A school district must make eligible students a "formal, written offer" of FAPE in order to satisfy its obligation under the IDEA. *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1526 (9th Cir. 1994). The Ninth Circuit has explained that this "formal requirement has an important purpose that is not merely technical . . . and should be enforced rigorously." *Id.* In particular, the court in *Union* explained:

> The requirement of a formal, written offer creates a clear record that will do much to eliminate troublesome factual disputes many years later about when placements were offered, what placements were offered, and what additional educational assistance was offered to supplement a placement, if any. Furthermore, a formal, specific offer from a school district will greatly assist parents in "presenting complaints with respect to any matter relating to the . . . educational placement of the child."

*Id.* (quoting 20 U.S.C. § 1415(b)). While *Union* involved a school district's failure to make any formal written offer, many courts have relied on *Union* to invalidate IEPs that were offered, but that were insufficiently clear and specific to permit parents to make an intelligent decision whether to accept, decline, or challenge the offer through a due process hearing. *Glendale Unified Sch. Dist. v. Almasi*, 122 F.Supp.2d 1093, 1107–08 (C.D. Cal. 2000); *S.H. v. Mount Diablo Unified Sch. Dist.*, 263 F. Supp. 3d 746 (N.D. Cal. 2017); *A.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 681 (4th Cir. 2007); *Knable v. Bexley Sch. Dist.*, *238 F.3d 755*, 769 (6th Cir. 2001); *Bend LaPine Sch. Dist. v K.H.*, No. 04-1468, 2005 WL 1587241 (D. Ore. June 2, 2005); *Mill Valley Elem. Sch. Dist. v. Eastin*, No. 98-03812, 32 IDELR 140, 32 LPR 6046 (N.D. Cal. Oct. 1, 1999); *Marcus I. v. Dept. of Educ.*, No. 10-00381, 2011 WL 1833207 (D. Haw. May 9, 2011).

Plaintiff argues that neither the initial January 2022 IEP nor the revised March 2022 IEP amounts to a clear and specific, written offer. The revisions to the January 2022 IEP were made in light of input and requests from E.C.D.'s parents. ECF No. 42 at 5. The Court therefore addresses the revised IEP from March 2022 rather than the earlier version. *See* 20 U.S.C. § 1414(d)(4)(A)(ii); *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 256 (1st Cir. 2003) (stating that the statute "mandates revision of the IEP to address information provided either by or to parents regarding the child's educational needs and services").

Plaintiff contends that the March 2022 IEP was unclear because the District's offer of services was for Lafayette Elementary School, but the IEP contained a page stating in two places that certain services were to be provided at Florence Elementary School. ECF No. 35 at 3. However, it is and was clear that these references were a clerical error. The remainder of the IEP makes clear that the services were to be provided at Lafayette. The March 2022 IEP's Team Action notes section explained that "[t]he IEP Team recommends placement at Lafayette Elementary School … This IEP document may contain errors that include 'Florence Elementary' in the document, as that is where [E.C.D.] is currently enrolled. That is not editable until enrollment changes." AR 916. The March 2022 IEP

meeting likewise clarified that the placement was for Lafayette. AR 925. The conduct of the parties during the IEP meetings and after the conclusion of the meetings similarly indicate that E.C.D.'s parents understood the placement was to be at Lafayette [AR 925, 959, 1336, 1339, 1699, 1836], and E.C.D.'s father testified that he understood the placement to be at Lafayette after the March 2022 meeting [AR 1699]. The ALJ found that "the March 13, 2022 IEP team meeting and the final offer in the March 25, 2022 IEP removed all doubt and clearly established that the offer was for placement at Lafayette. E.C.D.'s parents understood it that way when they rejected it." AR 1056. The Court agrees. The two references in the March 2022 IEP to services being provided at Florence were technical errors and did not result in the denial of a FAPE.

**B. The District Did Not Deny E.C.D. a FAPE by Failing to Offer Adequate Deaf and Hard of Hearing Services**

The IDEA's substantive requirement to provide a FAPE "is satisfied . . . if the child's IEP sets out an educational program that is 'reasonably calculated to enable the child to receive educational benefits.'" *Endrew*, 580 U.S. at 394. An appropriate public education "does not mean the absolutely best or 'potential-maximizing' education for the individual child." *R. Z. C. v. N. Shore Sch. Dist.*, 755 F. App'x 658, 661 (9th Cir. 2018) (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987)). The question is whether the program, at the time it was drafted, was objectively reasonable and designed to convey a "meaningful benefit" to the student. *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). When determining if an IEP is reasonable, courts are not to "substitute their own notions of sound educational policy for those of the school authorities which they review." *Endrew*, 580 U.S. at 404 (quoting *Board of Education v. Rowley*, 458 U. S. 176, 206 (1982). "At the same time, deference is based on the application of expertise and the exercise of judgment by school authorities." *Endrew*, 580 U.S. at 404.

Plaintiff argues that five hours per week of DHH services offered in the District's January 2022 IEP did not meet E.C.D.'s academic needs, denying him a FAPE. ECF No.

35 at 11. As noted above, this Court addresses the revised IEP from March 2022, which offered fifteen hours per week for the first 60 days, rather than the January 2022 version.

Plaintiff notes that E.C.D. needed "all day DHH services" rather than the fifteen hours per week offered in the March 2022 IEP. ECF No. 35 at 11. However, based on the testimony and evidence presented, the DHH services offered were reasonable for E.C.D. The District assessors and witnesses established that the District IEP and offer were reasonable in light of E.C.D.'s circumstances and reasoned that "too much support can be detrimental" and "can result in learned helplessness." AR 234, 882, 1486–87, 1489, 1611–14, 1777–80, 1815–1818, 1872; *see Mercer Island Sch. Dist.*, 592 F.3d at 950 ("[C]ourts are ill-equipped to second-guess reasonable choices that school districts have made among appropriate instructional methods.") (citation omitted); *J.G. v. Los Angeles Unified Sch. Dist.*, No. LACV2001593JGBEX, 2023 WL 8125847, at *10 (C.D. Cal. July 10, 2023) (same); *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1122 (9th Cir. 2011) ("The IDEA accords educators discretion to select from various methods for meeting the individualized needs of a student, provided those practices are reasonably calculated to provide him with educational benefit."). The ALJ determined that the District witnesses' testimony was credible and gave substantial weight to their testimony, and the Court gives due weight to such findings. AR 1041; *see Amanda*, 267 F.3d at 893 (holding that we give "due weight" to an ALJ's credibility findings "so long as they are supported by the record"); *see also Legris v. Capistrano Unified Sch. Dist.*, No. 20-56261, 2021 U.S. App. LEXIS 31138, at *3 (9th Cir. Oct. 18, 2021) (holding that the district court's deferral to the ALJ's credibility finding was permissible where the ALJ based her finding on the witness's live testimony and demeanor, and her finding was supported by the weight of other evidence and questioning the witness's conclusions).

The testimony of Plaintiff's witnesses, Dr. Hewitt and Ms. Mascolo, does not support Plaintiff's contention that the IEP offered was unreasonable. AR 1046, 1048. Dr. Hewitt and Ms. Mascolo did not address or show familiarity with the March 2022 IEP,

including the fifteen hours per week of DHH support and other services offered. AR 1044, 1047–48.[5] The ALJ appropriately discounted Dr. Hewitt's testimony, because she believed the offer was for only five hours per week of DHH support, there was no evidence that she ever observed E.C.D. in any classroom, knew anything about the DHH program at Lafayette, or had any knowledge of the skills or training of the Lafayette staff. *See N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d at 1212 (holding it was "reasonable for the hearing officer to rely on the testimony of [the school's] witnesses because they had observed [the student's] school performance" in contrast to the parent's witnesses who "based their opinions predominantly upon file reviews").

"An ALJ does not err so long as the IEP is reasonable, even if other services may have been appropriate." *See C.D. v. Stanislaus Union Sch. Dist.*, No. 1:22-cv-01389-SKO, 2024 U.S. Dist. LEXIS 127005, at *37 (E.D. Cal. July 18, 2024) (citing *Endrew*, 580 U.S. at 399). Accordingly, even if E.C.D. may have benefited from more than the offered services, that alone does not render the District's IEP unreasonable. *See Endrew*, 580 U.S. at 399 ("Any review of an IEP must appreciate that the question is whether the IEP is reasonable, not whether the court regards it as ideal."); *see Stanislaus Union Sch. Dist.*, 2024 U.S. Dist. LEXIS 127005, at *38; *see also Gregory*, 811 F.2d at 1314 (finding that a school is not required to provide a program merely because it is preferred by a parent, even if it were better than what the school district offered).

---

[5] According to the ALJ, Dr. Hewitt's opinions on needed DHH services were apparently offered for the first time at the hearing, and were not communicated to the IEP team at the time of drafting. AR 1045; *see Baquerizo v. Garden Grove Unified Sch. Dist.*, 826 F.3d 1179, 1187 (9th Cir. 2016) ("When reviewing whether a proposed educational setting is 'appropriate,' we employ the 'snapshot' rule, which instructs us to judge an IEP not in hindsight, but instead based on the information that was reasonably available to the parties at the time of the IEP.") (citing *Adams*, 195 F.3d at 1149)).

The ALJ found that Plaintiff "did not meet his burden of proving that San Diego's March 25, 2022 IEP would have provided insufficient DHH support." AR 1048. The Court agrees. Based on the Court's independent review of the record, including the witnesses' testimony and evidence, and affording substantial weight to the ALJ's thorough factual findings and conclusions, the Court finds that Plaintiff has not carried his burden to show that the ALJ erred in holding that the District provided E.C.D. adequate DHH services from January 1 to July 8, 2022.

### C. The District Did Not Deny E.C.D. a FAPE by Failing to Offer a Placement That Met E.C.D.'s Academic Needs

Plaintiff contends that the District failed to offer a placement that "meets ECD's academic needs." ECF No. 35 at 8. However, the argument portion of Plaintiff's brief does not specify with clarity *how* the placement failed to meet those needs, or precisely what the placement should have included. *See id.* at 8-11. The factual background portion of Plaintiff's brief intimates that the District should have diagnosed E.C.D. with dyslexia, and should have provided him services targeted to that diagnosis. *Id.* at 5-6. However, Plaintiff gives no indication that he made such an argument to the ALJ. The ALJ's Decision included a lengthy section concluding that the District's placement met E.C.D.'s academic needs, but makes no mention of dyslexia; and Plaintiff's appeal of that decision does not appear to fault the ALJ's decision in that regard. AR 1037-49.

In arguing for the first time on appeal that the District's placement was deficient for failing to address dyslexia, Plaintiff relies on two reports drafted after the ALJ hearing, by Dr. Spencer Wetter ("the Wetter report") and Dr. Jean Davenport ("the Davenport report"). The Wetter report contends that "[d]espite [E.C.D.'s 2021 assessment] results, which appear to reflect the presence of Dyslexia, the topic of a specific learning disorder was not addressed" by the District. ECF No. 34-1 at 3. The Davenport report, as described by Plaintiff, reflects that E.C.D. made "tremendous progress" after enrollment in a program for students with dyslexia, and demonstrates that "he needed [and was not provided]

reading intervention that targeted his phonological and orthographic processing deficits." ECF Nos. 35 at 6, 10.[6]

In an appeal challenging an IDEA administrative decision, district courts consider "the records of the administrative proceedings" and "additional evidence at the request of a party[.]" 20 U.S.C. § 1415(i)(2)(C). Additional evidence may include "evidence concerning relevant events occurring subsequent to the administrative hearing[,]" *Ojai*, 4 F.3d at 1473 (quoting *Burlington v. Dep't of Educ.*, 736 F.2d 773, 790–91 (1st Cir. 1984)), and evidence acquired after the hearing that sheds light on the objective reasonableness of a school district's actions at the time the school district drafted the IEP, *E.M. v. Pajaro Valley Unified Sch. Dist.*, 652 F.3d 999, 1004 (9th Cir. 2011); *Adams*, 195 F.3d at 1149. However, the actions of a school district cannot be "judged exclusively in hindsight," as an IEP is a "snapshot, not a retrospective." *Adams*, 195 F.3d at 1149 (quoting *Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1041 (3d Cir. 1993).

While additional evidence may be considered for these purposes, a plaintiff in an IDEA case is generally not free to raise new arguments for the first time on appeal. *See J.S. by and through S.S. v. Eugene Sch. Dist.*, No. 6:21-cv-1430-MK, 2022 WL 1241705, at *4-5 (D. Ore. Apr. 11, 2022); *C.D. v. Atascadero Unified Sch. Dist.*, No. 2:22-cv-05937-MCS-AGR, 2023 U.S. Dist. LEXIS 97394, at *11 (C.D. Cal. June 5, 2023) (declining the plaintiff's request to review IDEA issues that were not raised or considered in underlying administrative proceeding); s*ee also Marc. M. v. Dep't of Ed.*, 762 F.Supp.2d 1235, 1241 (D.Haw. 2011) (same); *Hailey M. ex rel. Melinda B. v. Matayoshi*, 2011 U.S. Dist. LEXIS 101061, 2011 WL 3957206, at *25 (D.Haw. Sept. 7, 2011) (same).

---

[6] In its June 21, 2024 order, this Court allowed Plaintiff to supplement the administrative record to include the Wetter and Davenport reports, concluding that they were non-cumulative and that they "could … shed light on whether the District failed to offer a placement that met Plaintiff's academic needs," while also noting that the merits had not yet been briefed. ECF No. 29 at 9.

Here, Plaintiff appeals the ALJ's determination that the District offered a placement that met E.C.D.'s academic needs. But as set forth in Plaintiff's merits briefing, the basis for Plaintiff's assertion that the placement was deficient—namely, the failure to address Plaintiff's dyslexia—is one that Plaintiff has not advanced before, and one that the ALJ had no opportunity to address.

Furthermore, despite Plaintiff's contention that "the topic of a specific learning disorder was not addressed" by the District in 2021, District psychologist, Dr. Ward, evaluated E.C.D. for and ruled out a specific learning disability in 2021.[7] ECF Nos. 34-1 at 3; 35 at 6; AR 726. Dr. Ward's December 13, 2021 evaluation included the diagnostic impression that E.C.D. "does not meet the criteria for Specific Learning Disability based on current assessments and in accordance with Education Code Title 5, Section 3030." AR 726. Although Plaintiff has offered the report of Dr. Wetter that disagrees with Dr. Ward, this later report does not undermine the reasonableness of the District's reliance on the earlier conclusion, which until recently was unchallenged by Plaintiff. *See also Avila v. Spokane Sch. Dist. 81*, 686 F. App'x 384, 385 (9th Cir. 2017) (holding that a district's testing for "specific learning disabilities" was adequate, and that the district was not required to administer special dyslexia subtests); *Robinson ex rel. Robinson v. Council Rock Sch. Dist.*, No. 05-1988, 2006 WL 1983180, at *5-6 (E.D. Penn. July 12, 2006) (holding that a dyslexic student's IEP provided a FAPE, "despite its lack of comprehensive phonics program designed to treat dyslexia").

---

[7] A specific learning disability is defined in Dr. Ward's report to mean: "a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, that may have manifested itself in the imperfect ability to listen, think, speak, read, write, spell, or do mathematical calculations, including conditions such as perceptual disabilities, brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia." AR 726.

Similarly, the Davenport report does not undermine the adequacy of the District's placement. Although E.C.D. benefitted from the intervention provided by Dr. Davenport, that does not render the IEP unreasonable or inadequate. *See C.D. v. Stanislaus Union Sch. Dist.*, No. 1:22-cv-01389-SKO, 2024 U.S. Dist. LEXIS 127005, at *38 (E.D. Cal. July 18, 2024) (concluding that "even if [the plaintiff] is correct that [the child] may have benefited from other services, that alone does not render the [d]istrict's IEP unreasonable"); *L.C. on behalf of A.S. v. Issaquah Sch. Dist.*, No. C17-1365JLR, 2019 WL 2023567 (W.D. Wash. May 8, 2019), aff'd sub nom. *Crofts v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048 (9th Cir. 2022) (holding that the district was not required to include "dyslexia-specific methodologies or curricula into [the] IEP" and reasoning that "the IDEA does not require the [d]istrict to design a program to maximize [the student's] educational potential").

Accordingly, the Court finds no error in the ALJ's conclusion that Plaintiff failed to prove that the District denied him a FAPE between January 1 and July 8, 2022, by failing to offer a placement that met his academic needs.

## IV. CONCLUSION

For the reasons above, this Court concludes as follows:

1. The ALJ's Decision is **AFFIRMED** and judgment is entered for the District.
2. Plaintiff's request for reimbursement and attorney's fees [ECF No. 35 at 15], is **DENIED**.

The Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

Dated: January 24, 2025

_____
Hon. Robert S. Huie
United States District Judge